IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY ANN HOLBROOK, Individually )
AND as Executrix of the Estate of Ronald )
Holbrook, AND as personal representative )
of the statutory beneficiaries of Ronald )
Holbrook, AND PATRICK DANIEL ) CIVIL ACTION NO. CV 05-304
HOLBROOK, Individually, )
 )
                     Plaintiffs, ) JUDGE KIM R. GIBSON
 )
v. )
 )
MICHAEL SCOTT WOODHAM, )
NEW ENTERPRISE STONE AND LIME )
COMPANY, INC., AND L. ROBERT )
KIMBALL AND ASSOCIATES, )
 )
                     Defendants. )

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### INTRODUCTION

This matter comes before the Court on Motions to Dismiss filed by all three Defendants pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. Defendant Michael Scott Woodham (hereinafter "Woodham") filed a Motion to Dismiss (Document No. 16) and supporting brief (Document No. 17) on September 16, 2005. Woodham requests that the claim for negligent infliction of emotional distress be dismissed for failure to state a cause of action and that various clauses of the Complaint be stricken as immaterial or irrelevant. Defendant New Enterprise Stone and Lime

1

Company, Inc. (hereinafter "New Enterprise") filed a Motion to Dismiss (Document No. 14) and accompanying brief (Document No. 30) on September 1, 2005 and October 6, 2005, respectively. New Enterprise makes the same requests as Woodham. Additionally, New Enterprise asks that the prayer for punitive damages be stricken and that Plaintiffs be required to plead their cause of action for breach of contract with more specificity. Defendant Robert Kimball and Associates, Inc., incorrectly designated as L. Robert Kimball and Associates (hereinafter "Kimball"), filed its Motion to Dismiss (Document No. 28) and brief in support thereof (Document No. 23) on September 28, 2005 and September 21, 2005, respectively.[1] In addition to its requests regarding the claim for negligent infliction of emotional distress and allegedly immaterial portions of the Complaint, Kimball also asks that the Complaint be entirely dismissed as to it because, as a construction design professional, Kimball has immunity from suit. On June 22, 2006, Kimball also filed a separate motion and supporting brief requesting dismissal of the Complaint based on Plaintiffs' failure to file a certificate of merit under Pennsylvania Rule of Civil Procedure 1042.3. (Document Nos. 41 and 42). Plaintiff has filed Responses to all of Defendants' motions. (Document Nos. 31, 33, and 48).[2]

Plaintiffs Mary Ann and Patrick Daniel Holbrook (hereinafter "Plaintiffs") are residents of Ohio and the wife and son of Ronald Holbrook (hereinafter "Decedent"). Complaint (Document No. 1), ¶¶

---

[1] Kimball's motion was originally filed on September 21, 2005, the same day as its brief, but was modified by the Docketing Clerk and refiled on September 28, 2005.

[2] Additionally, on August 15, 2006, Kimball filed a Motion to Stay Discovery Until Resolution of Defendants' Motions to Dismiss (Document No. 44). New Enterprise responded to that motion on August 22 seeking a similar stay as well as an approximately five-month enlargement of time for discovery (Document No. 45). Anticipating the resolution of the motions to dismiss, the Court granted a thirty-day stay of discovery on August 29, 2006 (Document No. 46). Plaintiffs filed their response to the initial Motion to Stay on September 7, 2006 (Document No. 47), after entry of the Court's order. Because the Court now decides all motions relating to the previously entered stay, discovery is ordered to recommence upon entry of the order accompanying this opinion and Documents 44 and 45 are dismissed as moot. Plaintiffs have also filed two motions (Document Nos. 50 and 51) contingent on the Court's resolution of Kimball's motion to dismiss for failure to file a certificate of merit. In light of the findings detailed in this Memorandum Opinion, those motions are also dismissed as moot.

1-3. On May 10, 2004, Decedent was employed as an electrician working on a construction project at the Bedford County Airport in Bedford, Pennsylvania. Complaint, ¶¶ 12, 13. As Decedent crouched down to hook up runway lights via a junction box located just beneath the surface of the runway, he was struck by a dump truck driven by Woodham. *Id.* Decedent's right arm was severed and he eventually bled to death. Complaint, ¶ 13. Decedent's son, Patrick Holbrook, was also at the job site that day and witnessed the immediate aftermath of the accident, even speaking to his mortally injured father. Complaint, ¶¶ 17, 18. Plaintiffs have brought this action in negligence against Woodham as the driver of the truck, against New Enterprise as the contractor on the project, and against Kimball as the project engineer. Complaint, ¶¶ 23, 24, 26. Plaintiffs seek to recover pecuniary losses associated with Decedent's death, as well as punitive damages and loss of consortium. Complaint, ¶¶ 21, 22, 25, 27. Additionally, Patrick Holbrook has brought a claim against each Defendant for negligent infliction of emotional distress based on his observations at the accident scene. Complaint, ¶¶ 18, 19, 20. Federal jurisdiction over this action is predicated on diversity of citizenship. Complaint, ¶ 10.

## ANALYSIS

### A. The Applicable Standard for 12(b)(6) Motions

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):

the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229[, 2232-33, 81 L. Ed.2d 59] (1984); *D.P. Enters.*, 725 F.2d at 944.

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The defendant bears the burden to demonstrate that the complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

In deciding a Rule 12(b)(6) motion to dismiss, a court does not have to accept or give credit to "bald assertions," "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 & n.8 (3d Cir. 1997) (citations omitted); *see also Pa. House, Inc. v. Barrett*, 760 F. Supp. 439, 449-50 (M.D. Pa. 1991).

In considering a motion to dismiss, the court is not deciding the issue of whether a plaintiff will ultimately prevail, but is deciding if the plaintiff is entitled to offer evidence to support the claims. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

> [D]ismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004) (footnotes omitted). In the case *sub judice*, the Court cannot assume that the Plaintiffs can prove any fact that is not alleged. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998) citing *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526,

4

103 S. Ct. 897, 902, 74 L. Ed.2d 723, 731 (1983).

### B. Plaintiff Patrick Daniel Holbrook's Claim for Negligent Infliction of Emotional Distress

All three Defendants have advanced the same arguments against Plaintiff Patrick Holbrook's claim for negligent infliction of emotional distress (Defense Briefs, Document Nos. 17, 23, and 30). Concerning this claim, the Complaint offers the following factual support:

> 15. The Plaintiff, Patrick Daniel Holbrook was on the premises where Ronald Holbrook was injured, spoke to his father before he died, and suffered extreme emotional anguish as a consequence of seeing his father's horrible injuries.
>
> \* \* \*
>
> 17. The Plaintiff, Patrick Daniel Holbrook, was near to his father when he sustained his fatal injuries.
> 18. The Plaintiff, Patrick Daniel Holbrook, witnessed the immediate aftermath of the truck running over his father, and saw and spoke to his father as he lay crushed and bleeding to death on the ground.
> 19. The Plaintiff, Patrick Daniel Holbrook, suffered specifically identifiably [sic] injuries include [sic] profound emotional distress as a result of witnessing his father's condition after being run over by a truck

Complaint, ¶¶ 15, 17-19. Defendants argue that Plaintiff fails to state a cause of action for negligent infliction of emotional distress because, as stated in the Complaint, Plaintiff Patrick Daniel Holbrook admits not witnessing the actual impact, but only the immediate aftermath of the accident. In Plaintiff's Reply to the Motions to Dismiss (Document No. 31), several additional facts emerge. Plaintiff Patrick Holbrook "was within yards of his father when he was hit," Reply, ¶ 32, and Decedent was "pinned to the ground underneath the truck's wheel, still obviously sustaining injury to himself when his son came to his side." *Id.* at ¶ 32. Even assuming these additional facts to be properly pleaded, the Court must agree with Defendants that no cause of action has been stated.

The Pennsylvania Supreme Court established a cause of action for the tort of negligent infliction of emotional distress in *Sinn v. Burd*, 404 A.2d 672 (Pa. 1979). Whereas previous cases made claims

5

for negligent infliction of emotional distress contingent on whether the plaintiff had been within a "zone of danger," thereby creating some fear for her own safety, *Sinn* abandoned the zone of danger theory in favor of recovery in a limited range of circumstances, regardless of whether the plaintiff was herself in jeopardy. *Sinn*, 404 A.2d at 686. The circumstances under which a plaintiff may recover under *Sinn* are tightly circumscribed and depend on whether three factors are met:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Sinn*, 404 A.2d at 685 (quoting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). In *Sinn*, the Pennsylvania Supreme Court took pains to distinguish the New York case of *Tobin v. Grossman*, 249 N.E.2d 419 (N.Y. 1969), where a mother heard screeching brakes from inside a house and ran immediately outside to find her toddler lying on the ground after being hit by a car:

> It should be noted that the facts of the case presently before us are markedly different in that Mrs. Sinn actually saw the defendant's vehicle strike and kill her daughter.... Our decision today is limited solely to those cases in which the plaintiff alleges psychic injury as a result of actually witnessing the defendant's negligent act.

*Sinn*, 404 A.2d at 683 n.15.

Since *Sinn*, Pennsylvania case law has uniformly upheld the requirement that a plaintiff must contemporaneously observe the negligent act itself. In *Yandrich v. Radic*, 433 A.2d 459 (Pa. 1981), a father arrived at an accident scene after an ambulance had taken away his son. The father followed the ambulance to the hospital, where he remained with his son until the boy died five days later. The father subsequently fell into a depression and committed suicide. His surviving son brought an action for negligent infliction of emotional distress on behalf of the father's estate. Defendant's preliminary

6

objections to this count were sustained on the basis that the father had not witnessed the actual accident:

> Appellant argues that the emotional trauma suffered by a parent upon learning of the negligent injury of a loved one is no less foreseeable than the trauma suffered by a parent who actually witnesses the tragic event. It is suggested that requiring contemporaneous observation of the accident represents an artificial attempt to limit liability which will ultimately result in arbitrary, piecemeal determinations.... We are unwilling to abandon the concept of "zone of danger" in toto and enter a realm of uncertainty with no workable guidelines for recovery.

*Yandrich*, 433 A.2d at 461.

In *Mazzagatti v. Everingham by Everingham*, 516 A.2d 672 (Pa. 1986), a mother whose daughter was struck by a car rushed to the accident scene from her workplace one mile away. She arrived to find her daughter still lying injured in the road. Her claim for negligent infliction of emotional distress was dismissed via summary judgment on the basis that she had not witnessed the accident itself:

> Where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system. The negligent tortfeasor inflicts upon this bystander an injury separate and apart from the injury to the victim.

*Mazzagatti*, 516 A.2d at 679.

In *Brooks v. Decker*, 516 A.2d 1380 (Pa. 1986), a father was returning from work when an ambulance passed him on its way to an accident scene. The father followed the ambulance to his own driveway to find his son had been struck by a car. Plaintiff then rode to the hospital in the ambulance with his son, who suffered severe brain damage. In entertaining a motion for preliminary objections in the nature of a demurrer, the Pennsylvania Supreme Court conducted a lengthy discussion of *Sinn*, *Yandrich*, and *Mazzagatti*:

7

> Appellant's theory of recovery, which is based primarily upon the fact that he has sustained some emotional injury, ignores several basic principles of tort liability. As we stated in *Mazzagatti*, "[t]hese principles, which require that the defendant's breach of a duty of care proximately cause plaintiff's injury, have established the jurisprudential concept that at some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability."
>
> Were we to accept appellant's argument and hold actionable all emotional trauma causally connected to the defendant's tortious conduct, we would reek [*sic*] upon our society a problem of unlimited or unduly burdensome liability. The criteria set forth in *Sinn v. Burd* serve as a balance between a policy of total denial of all such claims for the negligent infliction of emotional distress and a policy of recovery for all who suffer emotional injury, regardless of their proximity to the accident. As we explained in *Mazzagatti*:
>
>> The critical element for establishing such liability is the contemporaneous observance of the injury to the close relative. Where, as here, the plaintiff has no contemporaneous perception of the injury, the emotional distress results more from the particular makeup of the plaintiff rather than from the nature of defendant's actions.

*Brooks*, 516 A.2d at 1382 (citations omitted).

In *Bloom v. Dubois Reg'l Med. Ctr.*, 597 A.2d 671 (Pa. Sup. Ct. 1991), the plaintiff's wife was hospitalized for depression and suicidal tendencies. Plaintiff entered his wife's hospital room to find her hanging from her shoelaces in a failed suicide attempt. Despite the fact that his wife was still suspended when found by the plaintiff, the Superior Court, citing *Mazzagatti*, denied his claim on the basis that he had only witnessed the aftermath of her suicide attempt and not the negligence that allowed it to happen. *Bloom*, 597 A.2d at 683.

*Turner v. The Med. Ctr., Beaver Pa, Inc.*, 686 A.2d 830 (Pa. Sup. Ct. 1996) presents a rare case where the plaintiff recovered under a theory of negligent infliction of emotional distress. The plaintiff accompanied her sister to the hospital where the sister, twenty-two weeks pregnant with a miscarried fetus, was to deliver the stillborn baby. As the labor quickly progressed, the sister's requests for aid

8

from the hospital staff were ignored; plaintiff was ultimately forced to deliver the stillborn fetus by herself. Because plaintiff was forced to view and participate in the entire event, the Superior Court held that she had established a cause of action for negligent infliction of emotional distress. *Turner*, 686 A.2d at 834.

Pennsylvania case law as a whole thus demonstrates that in order to state a claim for negligent infliction of emotional distress, the plaintiff must witness the entirety of the negligent act, and in particular the initial infliction of the injury.

> The gravamen of the observance requirement is clearly that the plaintiff in a negligent infliction case must have observed the traumatic infliction of injury on his or her close relative at the hands of the defendant. . . . To recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow.

*Bloom*, 597 A.2d at 682. The heart-wrenching facts of the present case certainly capture the Court's sympathy for what Plaintiff Patrick Daniel Holbrook experienced. However, the issue as framed in Pennsylvania case law is not whether the facts command our sympathy, but whether the Plaintiff witnessed the commission of a negligent act. Where, as here, there is the slightest buffer zone between the negligent act and the Plaintiff's observance of the injury, that lapse of time operates to preclude recovery for negligent infliction of emotional distress. Accordingly, the motions to dismiss the claim for negligent infliction of emotional distress must be granted. Any leave to amend the claim for negligent infliction of emotional distress will not benefit Plaintiff because, absent him having observed the negligent act itself, the claim cannot be adequately pleaded. Therefore, since Plaintiff Patrick Daniel Holbrook did not observe the infliction of Decedent's injuries, his claim must be dismissed against all defendants with prejudice.

## C. The Rule 12(f) Motions to Strike

All three Defendants have also brought Motions to Strike pursuant to FED. R. CIV. P. 12(f) on the basis that the Complaint contains redundant, immaterial, impertinent and/or scandalous material. Document Nos. 16, 14, and 28. The Complaint contains two demands for recovery "in excess of $1,000,000.00." Complaint, ¶¶ 7, 8. This is contrary to Local Rule 8.1 of the United States District Court of the Western District of Pennsylvania, which provides:

> Except in diversity cases in which a party must plead that the matter in controversy exceeds the sum of $75,000, any pleading demanding general damages unliquidated in amount shall, without claiming any specific sum, set forth only that money damages are claimed.

Therefore, Paragraphs 7 and 8 are objectionable under Rule 12(f) and shall be stricken, without prejudice to the Plaintiffs to amend their Complaint to comply with L.R. 8.1.

The Complaint also contains a general allegation of negligence against each of the Defendants. With regard to Woodham, Paragraph 23 alleges that "on or about May 10, 2004, the Defendant, Michael Scott Woodham ("Woodham") was negligent in general and one or more of the following particulars." After listing numerous specific allegations of negligence, this paragraph concludes that Woodham was negligent "[i]n other ways not enumerated." Paragraph 24 and subparagraph 24(m) contain nearly identical language with respect to New Enterprise, and paragraph 26 and subparagraph 26(k) contain nearly identical language with respect to Kimball. Such language is redundant and immaterial to Plaintiffs' negligence claims. The Court therefore grants with prejudice this portion of Defendants' FED. R. CIV. P. 12(f) motions and orders that the following language be stricken from the Complaint: the words "in general" in paragraph 23; the words "generally and" in paragraphs 24 and 26; subparagraph 23(g) in its entirety; subparagraph 24(m) in its entirety; and subparagraph 26(k) in its

10

entirety. If the discovery process reveals additional negligent acts, Plaintiffs can request leave to amend the Complaint accordingly.

### D. Plaintiffs' Claim for Punitive Damages

Defendants New Enterprise and Kimball also seek dismissal of the Complaint's request for Punitive Damages for failure to state a cause of action under Federal Rule 12(b)(6). Document Nos. 14 and 28. Punitive damages are to be awarded sparingly and only in cases of outrageous conduct involving an "evil motive or . . . reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (citation omitted). "[W]hen assessing the propriety of the imposition of punitive damages, 'the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.'" *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citations omitted). The reckless indifference standard applicable to assessing the mental state of mind necessary to impose punitive damages requires that "1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that 2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 772.

"Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005). Even in cases of gross negligence, "there is insufficient culpability and awareness by the defendant of the nature of his acts and of their potential results either to warrant punishment or effectively to deter similar future behavior." *Smith v. Celotex Corp.*, 564 A.2d 209, 211 (Pa. Super. Ct. 1989).

However, negligent conduct may be so egregious that it can fairly be described as outrageous. The *Hutchinson* court specifically stated that "punitive damages are appropriate for torts sounding in

negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious or so careless as to indicate wanton disregard for the rights of the parties injured." *Hutchison*, 870 A.2d at 770 (citing RESTATEMENT (SECOND) OF TORTS § 908 (1979)).

With regard to New Enterprise, the Complaint asserts that the Defendant was negligent in the following ways:

a. In instructing Woodham to proceed forward in the dump truck when Holbrook was helpless in the path of the truck;

b. In failing assure [*sic*] that the area ahead of Woodham was clear before instructing him to proceed;

c. In arranging the site in such a way that vehicle traffic was directed through areas in which defenseless personnel were working;

d. In failing to arrange the worksite in such a manner that vehicle traffic was separated from areas in which personnel were working who could not reasonably be expected to look out for such traffic;

e. In permitting Woodham and his truck on the site;

f. In failing to communicate with Woodham and instruct Woodham on the activities at the site and safe routing around the site for his truck;

g. In failing to adhere to the standard of care for a professional contractor in New Enterprise's position;

h. In failing to institute adequate policies and procedures to insure a safe site;

i. In failing to adhere to applicable safety regulations, whether state or federal;

j. In failing to adhere to applicable industry standards and codes;

k. Breach of contract;

l. In breaching its duty of care owed to Ronald Holbrook;

m. [Stricken].

12

Complaint, ¶ 24. Based on these alleged facts, Plaintiffs conclude: "The negligent acts of New Enterprise were so willful, wanton and outrageous in character as to entitle the Plaintiffs to an award of punitive or exemplary damages, to punish New Enterprise and to discourage such conduct by others in the future." Complaint, ¶ 25.

Plaintiffs allege that Defendant Kimball was negligent in the following ways:

a. In arranging or in permitting to be arranged the worksite as alleged in ¶¶ 24(c)-(d).

b. In hiring, supervising, or contracting with New Enterprise, despite New Enterprise's extensive history of safety violations and injuries;

c. In permitting Woodham on the site;

d. In failing to communicate with Woodham and instruct Woodham on the activities at the site and safe routing around the site for his truck;

e. In failing to adhere to the standard of care for a professional engineer in Kimball's position;

f. In failing to institute adequate policies and procedures to insure a safe site;

g. In failing to adhere to applicable safety regulations, whether state or federal;

h. In failing to adhere to applicable industry standards and codes;

i. Breach of contract;

j. In breaching its duty of care owed to Ronald Holbrook;

k. [Stricken].

Complaint, ¶ 26. Paragraph 27 also alleges that "the negligent acts of Kimball were so willful, wanton and outrageous in character as to entitle the Plaintiffs to an award of punitive or exemplary damages, to punish Kimball and to discourage such conduct by others in the future."

Although this case may prove, as Defendants urge, to be one of ordinary negligence that will not support an award of punitive damages, it is premature to grant these motions at the present time. In reviewing a complaint under Rule 12(b)(6), the court is obligated to accept as true all allegations and

13

reasonable inferences therefrom. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Particularly with regard to paragraph 24(a) and paragraph 25(b), the door remains open for punitive damages to be appropriate, provided that facts emerge in the discovery process to support these claims. Accordingly, the motions to dismiss regarding punitive damages are denied without prejudice to raise the issue of punitive damages in motions for summary judgment or in another appropriate manner.

## E. Plaintiffs' Breach of Contract Claim

As quoted in full above, the Complaint alleges "breach of contract" against both New Enterprise and Kimball. Complaint, ¶¶ 24(k), 26(i). This allegation is stated as part of the negligence claim and does not constitute a separate cause of action. The Complaint does not state the existence of a contract, identify the parties thereto, or describe how the contract was breached. New Enterprise has brought a motion for more specific pleading pursuant to Federal Rule 12(e). Document No. 14. Kimball has simply requested that subparagraph 26(i) be dismissed pursuant to Rule 12(b)(6). Document No. 28.

In order to properly plead a cause of action for breach of contract under Pennsylvania law, a plaintiff must allege the existence of a valid contract to which plaintiff and defendant were parties, the contract's essential terms, that the plaintiff complied with the terms and the defendant did not, and that damages resulted. *Gundlach v. Reinstein*, 924 F. Supp. 684, 688 (E.D. Pa. 1996), *aff'd* 114 F.3d 1172 (3d Cir. 1997). Clearly, if Plaintiffs wish to state a separate cause of action for breach of contract, they will need to amend the Complaint in order to do so. Even if Plaintiffs are alleging that the breach of contract is part of the negligence action, Defendants will be unable to respond to the allegation without more supporting facts. Accordingly, New Enterprise's motion for a more definite statement is granted and Kimball's motion for dismissal is granted without prejudice. Plaintiffs are hereby given the

opportunity to amend this allegation.

**F. Kimball's Motion to Dismiss Pursuant to the Workers' Compensation Act.**

Section 471 of the Pennsylvania Workers' Compensation Act provides that

> (a) A construction design professional who is retained to perform professional services on a construction project or any employe of a construction design professional who is assisting or representing the construction design professional in the performance of professional services on the site of the construction project shall not be liable under this act for any injury or death of a worker not an employee of such design professional on the construction project for which workers' compensation is payable under the provisions of this act.

77 P.S. §471(a). A "construction design professional" is

1. A professional engineer or land surveyor licensed by the State Registration Board for Professional Engineers Land Surveyors and Geologists under the . . . Engineer, Land Surveyor and Geologist Registration Law;[3]
2. a landscape architect who is licensed by the State Board of Landscape Architects under the . . . Landscape Architects' Registration Law;[4]
3. an architect who is licensed by the Architects' Licensure Board under the . . . Architects Licensure Law;[5] or
4. any corporation or association, including professional corporations, organized or registered under the . . . General Association Act of 1988[6] practicing engineering, architecture, landscape architecture or surveying. . . .

77 P.S. § 25.3.

Kimball has moved to dismiss the claims against it based on the fact that it is a construction design professional. Document No. 28, p. 2. Plaintiffs argue in turn that § 471 applies to Workers' Compensation claims only and not to claims of common law negligence. Document No. 33, pp. 2-3. Because this section is a relatively recent addition to the Workers' Compensation Act, legal authority

---

[3] 63 P.S. §148

[4] 63 P.S. §901

[5] 63 P.S. §34.1

[6] 15 P.S. §20101

15

runs from scarce to virtually nonexistent. There is some treatise authority acknowledging a trend away from liability on the part of design professionals for injury to workers who are not their employees. *See* 5 PHILLIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 17:54 (2006) (tracing the recent "trend toward finding the design professional not responsible for work site accidents"). This scaling back of liability is based on the assumption that a design professional is responsible only for the safety and soundness of the actual plans and designs rather than the safety of the workplace. *Id.* It remains unclear whether there are situations where liability may attach if the design professional has assumed responsibility for workplace safety.

In any event, one thing is clear at this point. Kimball has brought this Motion to Dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In bringing this motion, Kimball is relying on facts presently outside the record, such as its status as a design professional. For that reason, and because the Court construes all reasonable inferences of fact in Plaintiffs' favor, the Motion to Dismiss will be denied without prejudice to raise the issue by means of a motion for summary judgment or in another appropriate manner.

### G. Kimball's Motion to Dismiss for Failure to File a Certificate of Merit

Pennsylvania Rule of Civil Procedure 1042.3 provides that:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

    (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

    (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Kimball's motion asserts that it is an engineering professional within the meaning of the Pennsylvania certificate of merit rule, PA. R.C.P. 1042.1(b)(1)(vi). Document No. 41, ¶ 8.

The Complaint in this case was filed on July 14, 2005, meaning that a certificate of merit, if required, would have been due by September 13, 2005. However, the Court cannot agree that a certificate of merit is necessary or appropriate in this case. By its terms, Rule 1042.3 applies to cases where it is alleged that "a licensed professional deviated from an acceptable professional standard," where a certificate of merit might serve to validate the allegations of a lay plaintiff. Such is not the case here, where Plaintiff's allegations are grounded not in professional malpractice but in basic negligence principles. Whether those principles will support a cause of action against Kimball remains to be seen. However, a certificate of merit would be irrelevant to the type of negligence alleged and will not be required. For this reason, Kimball's motion is denied with prejudice.

 An appropriate Order follows.

AND NOW, this **25th** day of September, 2006, this matter coming before the Court on the Defendant Michael Scott Woodham's Motion to Dismiss Pursuant to Rule 12(b) and Rule 12(f) of the Federal Rules of Civil Procedure (Document No. 16), Defendant New Enterprise Stone and Lime Company, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6), Rule 12(e) and Rule 12(f) (Document No. 14), and Defendant L. Robert Kimball and Associates, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure (Document No. 28) and Motion to Dismiss for Failure to File Certificate of Merit (Document No. 41), in accordance with the foregoing Memorandum Opinion **IT IS HEREBY ORDERED THAT**:

1) All of the Defendants' Motions to Dismiss are **GRANTED WITH PREJUDICE** as to Plaintiff Patrick Daniel Holbrook's claim for negligent infliction of emotional distress; and

2) The Defendants' Motions to Strike are **GRANTED WITHOUT PREJUDICE** for Plaintiff to amend Paragraphs 7 and 8, and are **GRANTED WITH PREJUDICE** as to Subparagraphs 23(g), 24(m), and 26(k) in their entireties, as well as the words "in general" in Paragraph 23 and "generally and" in Paragraphs 24 and 26; and

3) Defendants New Enterprise Stone and Lime Company, Inc. and L. Robert Kimball and Associates, Inc.'s Motions to Dismiss with regard to punitive damages are **DENIED WITHOUT PREJUDICE** to raise this issue again at a later time; and

4) Defendant L. Robert Kimball and Associates, Inc.'s Motion to Dismiss Plaintiff's breach of contract claim is hereby **GRANTED WITHOUT PREJUDICE**, and Defendant New Enterprise Stone and Lime Company, Inc.'s Motion for More Definite Statement with regard to the breach of contract claim

is hereby **GRANTED**; and

5) Defendant L. Robert Kimball and Associates, Inc.'s Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to 77 P.S. § 471 and Rule 12(b)(6) is hereby **DENIED WITHOUT PREJUDICE** to raise this issue again at a later time; and

6) Defendant L. Robert Kimball and Associates, Inc.'s Motion to Dismiss for Failure to file a certificate of merit is **DENIED WITH PREJUDICE**; and

7) Plaintiffs' Contingent Motion for Extension of Time (Document No. 50) and Contingent Motion for Leave to File an Amended Complaint (Document No. 51) are **DISMISSED AS MOOT**; and

8) Accordingly, Defendant L. Robert Kimball and Associates, Inc.'s Motion to Stay Discovery (Document No. 44) and Defendant New Enterprise Stone and Lime Company, Inc.'s Response to Motion to Stay Discovery (Document No. 45) are **DISMISSED AS MOOT**; and

9) The Court's Order of August 29, 2006, staying discovery for thirty days is **AMENDED**. Discovery is to **RECOMMENCE** upon the date of this Order.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

Cc: **All counsel of record**