## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY ANN HOLBROOK, individually )
and as Executrix of the ESTATE OF )
RONALD HOLBROOK, and as personal )
representative of the statutory beneficiaries )
RONALD HOLBROOK, AND PATRICK )
DANIEL HOLBROOK, individually, )
)
        Plaintiffs, )
)     CIVIL ACTION NO. 3:05-304
    v. )
)     JUDGE KIM R.GIBSON
MICHAEL SCOTT WOODHAM, )
NEW ENTERPRISE STONE AND LIME )
COMPANY, INC., AND L. ROBERT )
KIMBALL AND ASSOCIATES, )
)
. )
    v. )
        Defendants. )
)
BRUCE & MERRILEES ELECTRICAL )
COMPANY )
)
        Third-Party Defendant. )
)

## OPINION AND ORDER

This matter comes before the Court on Third-Party Defendant Bruce & Merrilees Electric

Company's "Motion for Reconsideration or in the Alternative for Certification for Interlocutory

Appeal" (Doc. No. 197). Bruce & Merrilees protests the denial in part of its Motion to Dismiss

Third-Party Complaints (Doc No. 146), as decided in the Court's September 30, 2008

Memorandum Opinion and Order (Doc. No. 191). The question before the Court is whether the

Court erred in failing properly account for Bruce & Merrilees' immunity under the Pennsylvania

Workers' Compensation Act. After review of all of Bruce & Merrilees' arguments, as well as the

response arguments presented by Woodham and New Enterprise, the Court will grant this Motion

for Reconsideration.

## I. Procedural Setting on a Motion for Reconsideration

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Such motions may only be granted if the seeking party shows one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citing *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Agreeing to reconsider this matter obviously challenges the weighty interests of the parties in the finality of the Court's previous Opinion. *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236 (W.D. Pa. 1998) ("Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided." (citing *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)). Therefore, Bruce & Merrilees bears a heavy burden to show a clear error of law or fact. Furthermore, the dilatory filing of the Motion invokes additional compelling fairness implications to the other parties. Given these concerns, the Court was initially disposed toward refusing to consider the Motion on its merits; nevertheless, in pursuit of the goal of disseminating the most accurate legal decisions possible, the Court will address the matter.

## II. Essential Facts

The Court's September 30, 2008 Memorandum Opinion (hereinafter "Sept. 30 Opinion") sets forth the relevant factual and procedural history, and the parties are directed to that Opinion

2

for further reference. In short, though, the essential matters are summarized as follows. Defendants Woodham and New Enterprise filed third-party complaints against Bruce & Merrilees, alleging that Bruce & Merrilees' negligence was a contributing factor in Holbrook's injuries and eventual death. Woodham and New Enterprise also averred that a contract entered into by Bruce & Merrilees waived its statutory immunity provided by the Pennsylvania Worker's Compensation Act ("PWCA"). This contract was entered into between Bruce & Merrilees and the Airport Authority, with L. Robert Kimball and Associates ("Kimball") as an expressly stated intended beneficiary; thus Bruce & Merrilees responded that to the extent the contract waived the protections of the PWCA, it did so only as to Kimball.

While dismissing New Enterprise's and Woodham's other claims against Bruce & Merrilees, the Sept. 30 Opinion did not dismiss the claims for contribution. The Court interpreted the broad language of the contract to waive Bruce & Merrilees' workers' compensation immunity for the purposes of the work upon the airport project; under this line of reasoning, such a waiver could be seen as enabling contribution claims from parties such as Woodham and New Enterprise. The Court chose to give effect to the clear language of Bruce & Merrilees' agreement to waive its immunity to contribution. While the contract was not specifically between Bruce & Merrilees and Woodham, or Bruce & Merrilees and New Enterprise, the Court found no reason that these two parties should be excluded from Bruce & Merrilees' express and unambiguous statement that it agreed to be subject to contribution. All subcontractors to the Bedford Airport project signed similar clauses, and the Court felt that the contractual situations of all parties, the apparent intent of the parties, as well as the equities of the matter, all militated against dismissing the contribution claims.

In response to the Court's Sept. 30 Opinion, Bruce & Merrilees argues that the Court

3

misinterpreted both the contract and Pennsylvania law. Bruce & Merrilees first argues that the Court focused upon the waiver language of the contract without taking adequate account of other language that limited the scope of intended beneficiaries. Furthermore, Bruce & Merrilees argues that a more complete examination of the contract reveals Bruce & Merrilees' intention only to waive immunity through indemnification, as to Kimball. Bruce & Merrilees also argues that Pennsylvania law "obliterates" any cause of action for contribution against an employer in these circumstances. Bruce & Merrilees' conclusory language calls into question its analysis and positions; nonetheless, the Court takes the opportunity presented for a full and complete review of all relevant legal questions.

### III. Court's Obligation to Apply Pennsylvania Law

In resolving this matter, this Court applies Pennsylvania law. A federal district court exercising diversity jurisdiction applies state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R.. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). In discerning the content and dictates of Pennsylvania law, this Court looks to Pennsylvania's statutes and the decisions of Pennsylvania's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) Where a state's high court has not issued a controlling opinion, the Third Circuit explained:

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators.

4

*Penn. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1982)

## IV. Function and Structure of Workers Compensation Statutes

Prior to direct analysis of the facts and law in this matter, the Court finds it helpful to quickly consider the broader landscape surrounding the issues. In particular, proper resolution of this matter is aided by a brief look at the theory and themes of workers' compensation law.

Workers' compensation statutes create comprehensive and exclusive schemes between employer and employee for awarding benefits and medical care to employees who suffer work-related injuries. While the tort system focuses upon liability, the fundamental test of workers' compensation law is the injury's connection to employment. *See* 1-1 Larson's Workers' Compensation Law § 1.01 (2008). The primary purpose of such statutory schemes is to facilitate the prompt and fair payment for work-related injuries, without worrying about a determination of fault. *See Spidle v. Livingston Constr. Co.*, 457 A.2d 565, 567 (Pa. Super. Ct. 1983) (explaining that the purposes of the PWCA are to provide employees with quick compensation, without the time and expense of litigation, while also shielding employers from substantial losses). The employer pays into an insurance system, the funds of which are then used to compensate injured employees. *See* 1-1 Larson's Workers' Compensation Law § 1.01. The employer further agrees to waive various common law defenses against the employee, such as contributory fault. *Id.* In exchange for this right to quick and reliable compensation, the employee is not allowed to sue the employer; additionally, the employee's amount of recovery is expressly limited. *See Brown v. Dickey*, 155 A.2d 836, 838 (Pa. 1959) (noting that the PWCA serves the dual purpose of limiting rights of employers and employees in order to protect both from the costs and problems of litigation).

### A. Third Party's Action against Negligent Employer

5

While an injured employee gives up the right to sue his employer, she retains the right to sue third persons whose negligence caused the injury. 1-1 Larson's Workers' Compensation Law § 1.01. This ability to sue third parties, but not employers, can lead to mystifying results where the employer and the third party are jointly negligent and dually responsible for an injury. Consider a scenario where two tortfeasors are jointly responsible for a victim's substantial injury. Applying a standard comparative fault regime, a jury finds Party A 90% responsible for the harm, and Party B 10% responsible for the harm. The two parties would share the costs of compensating the victim in accordance with the jury's apportionment of the fault. However, where Party A is the injured victim's employer, it is statutorily immune. In such a scenario, Party A's immunity leaves Party B responsible for the large liability that it would not have had to bear if Party A not been the victim's employer. In such a circumstance, in effect, Party B subsidizes the workers' compensation system by taking on full liability for a jointly caused injury. Furthermore, this example illustrates possible disincentives for employers with respect to taking precautions and exercising due care.

Legislatures and courts have responded to the issues raised by this scenario in a variety of ways. *See* 7-121 Larson's Workers' Compensation Law § 121.01[1]. Some solutions emphasize the integrity of the workers' compensation exclusivity provisions, leaving third party tortfeasors to deal with the full consequences of an injury to which it was only a contributor; other legislatures and courts have facilitated more equitable remedies for the third party. Professor Larson, in an oft-quoted phrase, characterizes this question of a third party's right to contribution from a negligent employer as "[p]erhaps the most evenly-balanced controversy in all of compensation law." 7-121 Larson's Workers' Compensation Law § 121.01[1]. He further writes:

> Because of the closeness of the issue, the number and variety of

6

> attempted solutions, both legislative and judicial, has been nothing short of breathtaking, and the end is by no means in sight. Even when deliberate legislative choices have been made, that has not necessarily been the end of the matter, for more than once the courts have had the last word by declaring the statutes unconstitutional. Indeed, few areas of law have evoked such daring displays of uninhibited judicial activism, with centuries-old doctrines being bulldozed out of the way to clear a path for an "equitable" compromise.

7-121 Larson's Workers' Compensation Law § 121.01[1].

All fifty states have established workers' compensations schemes; however, states manage the policy balances in different ways. As to the instant issue of third party contribution rights, the majority approach shields employers from suit for contribution by a joint tortfeasor even where the employer's concurring negligence contributed to the employee's injury. 7-121 Larson's Workers' Compensation Law § 121.02[1]. These jurisdictions exempt employers from the definition of a joint tortfeasors, meaning that typical rights to contribution from the employer simply do not exist. *Id.* However, the minority rule permits limited contribution. 7-121 Larson's Workers' Compensation Law § 121.03. It is obviously dangerous to directly analogize from state to state, given differing statutory regimes; nonetheless, the decision of certain states to make broader allowance for contribution are instructive.[1]

## B. Summary of Pennsylvania's Workers' Compensation Act

Under the PWCA, an employer is granted immunity from liability to an employee for work-related death or injury. Section 303(b) of PWCA, 77 P.S. § 481(b) provides:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents,

---

[1]*See, e.g., Lambertson v. Cincinnati Corp.*, 257 N.W. 2d 679 (Minn. 1977) (adopting a results-oriented approach, in pursuit of a more equitable solution, that allowed for employer contribution in accordance with its fault, up to the amount of its workers' compensation liability).

7

dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

Pennsylvania courts and federal courts applying Pennsylvania law have uniformly interpreted this provision to grant employers broad statutory immunity from suits by third parties. *See, e.g., Clark v. Williamette Indus.*, 918 F. Supp. 139, 141 (W.D. Pa. 1996) (Not only does that Act provide an employer with immunity from suit for accidents within the scope of employment, it also bars an employer from being joined in a suit against a third party arising from such an accident. The purpose of such a bar is to avoid a situation where the employer would become doubly liable for the same accident.") (citations removed); *see also Snare v. Ebensburg Power Co.*, 637 A.2d 296, 299 (Pa. Super. Ct. 1993) ("The exclusivity provision of the Workers' Compensation Act essentially 'bars tort actions flowing from any work-related injury.'" (quoting *Kline v. Arden H. Verner Co.*,469 A.2d 158, 160 (Pa. 1983))).

In 1977, the Pennsylvania Superior Court provided an excellent summary of the recent history of Pennsylvania Workers' Compensation legislation:

The National Commission on State Workmen's Compensation Laws submitted its report to the Congress and the President in July, 1972. The report contained 84 recommendations for the improvement of state workmen's compensation laws, and

8

of the84 recommendations, 19 were deemed essential by the Commission. Recommendations R.2.18 and R. 2.19 address immunity and exclusivity of employers from negligence actions when an employer is impaired or dies because of a work-related injury or disease. The Commission recognized that its recommendations would result in increased costs to employers and included that exclusive liability of an employer as one of the 19 essential recommendations

With the Commission report as a background, the Pennsylvania Legislature in the years 1972 through 1974 undertook a massive overhaul of the State's Workmen's Compensation Law and Occupational Disease Law which, among other items, caused the average weekly payment to rise from $60.00 per week to a present $187.00 per week. It was the intention of the Legislature to have the Pennsylvania Workmen's Compensation Law comply with as many of the essential recommendations of the Commission as possible. This culminated on December, 1974 with the enactment of S.B. 1223, wherein the intention of the amendments to Section 303 was to grant the employer total immunity from third-party actions. To accomplish this, the Legislature adopted the language in Section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. s 901, et seq., where the employer is granted total immunity from third-party actions and is also subrogated to the full extent of its workmen's compensation lien. This becomes a statutory*369 right, and it is not necessary for the employer to enter the action as an equitable plaintiff as is the case in some other jurisdictions. The Federal case law is lengthy and affirms the language of Section 5, and it is with this thought in mind that the Pennsylvania Legislature adopted the present Section 303 language which reads as follows . . . .

. . . By this amendment, the Legislature made the Pennsylvania Workmen's Compensation Act a complete substitute for, not a supplement to, common law tort actions.

*Hefferin v. Stempkowski*, 372 A.2d 869, 870-71 (Pa. Super. Ct. 1977).

Prior to the described 1974 Amendments to the Workmen's Compensation Act, Pennsylvania law permitted a third party tortfeasor, sued by an injured employee, to join the plaintiff's employer as an additional defendant to seek contribution or indemnity; however,

9

employer liability was limited by its level of Worker's Compensation liability. *See Bell v. Koppers*, 392 A.2d 1380, 1381(Pa. 1978) ("Prior to February 5, 1975, Pennsylvania law permitted a third party sued by an injured employee to obtain contribution or indemnity from the employer to the extent of the latter's statutory compensation limits.") (citing *Socha v. Metz*, 123 A. 2d 837 (Pa. 1956); *Maio v. Fahs*, 14 A.2d 105 (Pa. 1940)). Professor Larson labeled this court-created doctrine the "Pennsylvania Rule." Arthur Larson, *Third Party's Action Over Against Employer*, 1982 Duke L.J. 483, 491 (1987).

Yet following the 1974 amendments, "absent a contract of indemnity, the employer may not be joined for any purpose whatsoever." David B. Torrey and Andrew E. Greenberg, *Workers' Compensation: Law & Practice* § 10:76 (2008). Pennsylvania courts have been emphatic in affirming that the PWCA reflected a clear legislative intent to immunize employers from involuntary joinder in an employee's suit against a third party tortfeasor for any purpose. *See, e.g.*, *Heckendorn v. Consol. Rail Corp.*, 465 A.2d 609, 613 (Pa. 1983); *Tsarnas v. Jones & Laughlin Steel Corp.*, 412 A.2d 1094, 1098 (Pa. 1980) ("It is clear that Section 303(b), rather than limiting the amount of damages recoverable in a suit for contribution, actually abolishes the right of contribution which third party tortfeasors had against employers.").

## IV. Boundaries of Contract- based Exception to Employer Immunity

The parties do not appear to dispute that a contribution action against Bruce & Merrilees would be barred absent the putative waiver contained in the contractual provision. Furthermore, Woodham and New Enterpise both acknowledge that the contract does not call for Bruce & Merrilees to indemnify Woodham or New Enterprise. Rather, Woodham and New Enterprise present a type of hybrid argument: they say that their claims are for contribution, based in tort rather than contract; at the same time, though, they argue the claims are facilitated by a clause of

10

a contract entered into by Bruce & Merilees with the Airport Authority. Specifically, Woodham and New Enterprise argue that the following clause is a waiver of B&M's immunity to "damages, contribution or indemnity" by a "written contract entered into by the party alleged to be liable":

> 30-11 CONTRACTOR'S INDEMNITY. "Contractor, for itself, its successors and assigns, agrees to indemnity and save Owner, its successors, assigns, employees, agents, engineers, architects, and the Commonwealth of Pennsylvania harmless from an against any and all claims , demands, damages, actions or causes of action, together with any and all losses, costs or expenses in connection therewith or related thereto, asserted by any person or person, INCLUDING EMPLOYEES OF CONTRACTOR, for bodily injuries, death or property damage arising or in any manner growing out of the work performed or not to be performed under this Contract whether or not caused by the fault or negligence of Owner. CONTRACTOR, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, HEREBY EXPRESSLY AGREES TO WAIVE ANY PROVISION OF THE "PENNSYLVANIA WORKMEN'S COMPENSATION ACT, INCLUDING SECTION 303(b)" WHEREBY CONTRACTOR COULD PRECLUDE ITS JOINDER AS AN ADDITIONAL DEFENDANT OR AVOID LIABILITY FOR DAMAGES, CONTRIBUTION OR INDEMNITY IN ANY ACTION AT LAW, OR OTHERWISE WHERE CONTRACTOR'S EMPLOYEE OR EMPLOYEES, HEIR, ASSIGNS OR ANYONE OTHERWISE ENTITLED TO RECEIVE DAMAGES BY REASON OF INJURY OR DEATH BRING AN ACTION AT LAW AGAINST THE OWNER, ITS SUCCESSORS, ASSIGNS, EMPLOYEES, AGENTS, ENGINEERS, OR ARCHITECTS."
>
> Contractor, of itself, its successors, and assigns, agrees to indemnify the Owner, its successors, assigns, employees, agents, L. Robert Kimball & Associates, inc. and the Commonwealth of Pennsylvania, Department of Transportation, against all fines, penalties or losses incurred for or by reason of the violation by Contractor in the performance of this Contract, of any ordinance, regulation, rule or law of any political subdivision or duly constituted public authority. Without limiting the foregoing, the Contractor, at the request of Owner, its successors, assigns, employees, agents, L. Robert Kimball& Associates, inc. and the Commonwealth of Pennsylvania, Department of Transportation, agrees to defend at the Contractor's expense any suit or proceeding brought against the Owner, its successors, assigns, employees,

11

> agents, engineers, architects, or the Commonwealth of
> Pennsylvania, due to or arising out of the work performed by the
> Contractor."

Doc. No. 126, ex. A.

In part, Woodham and New Enterprise present this creative hybrid argument to evade two bodies of law that stand against their interests in this matter. Pursuing a contribution claim without reference to any contractual language would fail due to the statutory bar. However, pursuing an indemnity-type claim based solely upon the contractual language would similarly fail given the status of Woodham and New Enterprise as non-contracting parties. In approaching this hybrid argument, the Court first analyzes whether employer immunity can be waived, pursuant to the "express contract" clause of section 303(b),[2] in such a way as to restore the relevance of Pennsylvania's contribution law, thus allowing New Enterprise and Woodham the opportunity to seek contribution from Bruce & Merrilees in proportion to Bruce & Merrilees' fault.

**A. As a Matter of Law, the Contractual Exception Language within Section 303(b) Does Not Allow a Waiver to Nullify the Statute's Broad Effect so as to Restore the Typical Tort Regime**

New Enterprise's and Woodham's arguments regarding waiver present an interesting, but nonexistent interpretation of section 303(b). In the Court's opinion, there are two logical ways to view the effect of the "unless" language in section 303(b). The first viewpoint is that the "unless" language allows parties, by contract, to waive the entire provision of the PWCA so that their relationship is governed solely by other generally applicable laws. The second viewpoint is that the "unless" language allows parties to set up contractual relationships with one another that will exclusively govern their respective duties and liabilities.

---

[2] ". . . unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." 77 P.S. § 481(b).

12

New Enterprise and Woodham of necessity subscribe to the first viewpoint. In their initial responses to the motion to dismiss, they argued that Pennsylvania law generally allows parties to execute general waivers of statutory protections. *See* Docs. No. 152 and 154, p. 8. However, this concept of complete waiver of workers' compensation immunity, while intellectually attractive as facilitating an interesting solution to the negligent employer problem, finds no basis in Pennsylvania jurisprudence.

Alternatively, the second interpretation of the consequences of the "unless" clause finds substantial support in Pennsylvania law, particularly in cases interpreting indemnity agreements governing workplace-related injuries. *Bell v. Koppers Co.*, 392 A.2d 1380, 1382 (Pa.: 1978) ("Section 303(b) of the Workmens' Compensation Act more than alters, it obliterates, a cause of action"); *Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 308-09 (Pa. Super. Ct. 1993); *Hefferin v. Stempkowski*, 372 A.2d 869, 871 (Pa. Super. Ct. 1977) ("By this amendment the Legislature made the Pennsylvania Workmen's Compensation Act a complete substitute for, not a supplement to, common law tort actions"); *see also* David B. Torrey and Andrew E. Greenberg, *Workers' Compensation: Law & Practice* § 10:76 (2008) ([Section 303(b)] has been conclusively interpreted to mean that the employer cannot be joined for any purpose in an action by or against a third party absent an express contract of indemnity between the third party and the employer.").

In responding to the weight of these cases, New Enterprise and Woodham brush them aside as solely focused upon indemnity and thus irrelevant to the issue of contribution. Bruce & Merrilees aggressively retorts that judicial language dealing with indemnity contracts is directly applicable to this matter. New Enterprise and Woodham relatedly argue that Bruce & Merrilees, in its briefs, appears to misunderstand the distinction between contribution and indemnification.

If that is the case, Bruce & Merrilees stands in good company. While it is an easy enough

13

solution to cite static dictionary definitions of the terms, a better understanding of the doctrines

requires research into distinctions in practice and theory as evolving over time, and in varying

jurisdictions and disciplines. Such an endeavor is obviously beyond the scope of this opinion.

Nonetheless, the Court makes note that over time, some distinctions between the two terms have

been blurred. Thus, for the purposes of this case only, the Court will attempt a brief discussion

of the two concepts to facilitate analysis.

Black's Dictionary defines "contribution" as follows:

> 1. The right that gives one of several persons who are liable on a
> common debt the ability to recover ratably from each of the others
> when that one person discharges the debt for the benefit of all; the
> right to demand that another who is jointly responsible for a third
> party's injury supply part of what is required to compensate the
> third party. – Also termed *right of contribution.* 2. A tortfeasor's
> right to collect from others responsible for the same tort after the
> tortfeasor has paid more than his or her proportionate share, the
> shares being determined as a percentage of fault. 3. The actual
> payment by a joint tortfeasor of a proportionate share of what is
> due.

*Black's Law Dictionary* 329 (7th Ed. 1999)

Prosser and Keeton explain: "The contribution defendant must be a tortfeasor, and

originally liable to the plaintiff." W. Page Keeton, *Prosser and Keeton on Torts* § 50 (5th Ed.

1984).

Meanwhile, Black's defines "indemnity" as follows:

> 1. A duty to make good any loss, damage, or liability incurred by
> another. 2. The right of an injured party to claim reimbursement
> for its loss, damage, or liability from a person who has such a duty.
> 3. Reimbursement or compensation for loss, damage, or liability
> in tort; esp., the right of a party who is secondarily liable to recover
> from the party who is primarily liable for reimbursement of
> expenditures paid to a third party for injuries resulting from a
> violation of a common-law duty.

14

*Black's Law Dictionary* 772 (7th Ed. 1999)

Indemnity involves reimbursement in full of one who has discharged a common liability.

*See* W. Page Keeton, *Prosser and Keeton on Torts* § 51 (5th Ed. 1984). The Pennsylvania

Supreme Court explains:

> Unlike comparative negligence and contribution, the common law
> right of indemnity is not a fault sharing mechanism between one
> who was predominantly responsible for an accident and one whose
> negligence was relatively minor. Rather, it is a fault shifting
> mechanism, operable only when a defendant who has been held
> liable to a plaintiff solely by operation of law, seeks to recover his
> loss from a defendant who was actually responsible for the
> accident which occasioned the loss.

*Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986).

Despite this attempt at distinguishing the terms, the Court notes that the terms are blurred

in numerous legal opinions. Prosser and Keeton explain:

> There is an important difference between, first, an order
> distributing loss among tortfeasors by requiring others each to pay
> a proportionate share to one who has discharged their "joint"
> liability and, second, an order requiring another to reimburse in
> full one who has discharged a common liability. In the prevailing
> usage, the first is referred to as contribution; the second, as
> indemnity. Because of either confusion or deliberate departure
> from prevailing usage, however, there are decisions in which full
> reimbursement has been allowed under the name of contribution,
> or some form of distribution has been allowed in the name of
> indemnity.

W. Page Keeton, *Prosser and Keeton on Torts* § 51 (5th Ed. 1984) (footnotes omitted).

This court feels that consonant with the above definitions, in certain instances,

"indemnity" has been used by courts as a broad term, the circumference of which, in some

instances, includes the more specific technical definition of contribution. In a sense, then,

contribution and indemnity, while obviously different species with distinguishing characteristics,

15

reside in the same genus.

Having set out these working definitions, the Court's analysis now returns to the language of the statute, and interpretations provided by Pennsylvania Courts. As stated above, Pennsylvania cases analyzing indemnity agreements dictate that a workers' compensation-related claim against an employer by a third party tortfeasor exists only as a contract-based action, premised upon the terms of an express contract. *See, e.g., Hefferin v. Stempkowski*, 372 A.2d 869, 871 (Pa. Super. Ct. 1977) ("By this amendment the Legislature made the Pennsylvania Workmen's Compensation Act a complete substitute for, not a supplement to, common law tort actions.").

New Enterprise's and Woodham's only response to such language is that the cited cases deal only with indemnity actions rather than contribution actions. The Court does not blindly pass over this distinction. However, the Court finds that the language of these cases, in establishing that the PWCA is a complete substitute for common law actions, is equally applicable to contribution actions as to indemnity actions. First, consider the proximity of "contribution" to "indemnity" within the language of the statute: the two terms are included within the same small list. Therefore, it follows that assessing a contribution claim likely should proceed within the same general framework as assessing an action for indemnity, albeit with minor adjustments allowed for the distinctions between the two theories. Furthermore, New Enterprise and Woodham have not presented, nor can this Court cannot find, any legislative intent to distinguish the treatment of contribution and indemnity in terms of how section 303(b) is applied.

Additionally, the distinction between the terms is simply not as great as New Enterprise and Woodham seem to argue. Admittedly, indemnity frequently means that a party agrees to be liable for another's negligence, or agrees to be entirely liable for damages; such an undertaking

16

is obviously more serious than an undertaking to be liable for one's own negligence, as in contribution. However, this distinction, while important, does not singlehandedly wipe away the relevance of indemnity cases to an issue of contribution. Especially in the workers' compensation immunity context, this difference is more one of degree than of kind: waiving workers' compensation liablity for contribution is strikingly similar to an indemnification, as it is the employer agreeing to be held liable for negligence for which without such a contract, it would not be held liable. Hence, this Court finds that reasoning applicable to indemnification agreements is relevant to the instant matter. *See Bester v. Essex Rental Corp.*, 619 A.2d 304, 306-07 (Pa. Super. 1991) ("under [section 303(b)], a third party may not seek *contribution or indemnity* from the employer, even though the employer's own negligence may have been the primary cause of the employee's injury, absent an express provision for indemnity in a written contract.") (internal citation omitted) (emphasis added).

Thus, as in indemnity actions, a contribution action by a third party torfeasor against an immune employer is contract-based. *See Szymanski-Gallagher v. Chestnut Realty Co.*, 597 A.2d 1225 (Pa. Super. Ct. 1991); *Remas v. Duquesne Light Co.*, 537 A.2d 881 (Pa. Super. Ct. 1988), *Rankin v. Sherwin-Williams Co.*,486 A.2d 489 (Pa. Super. Ct. 1984) (dismissing tort based contribution claim but allowing contract-based claim against employer); *Pendrake v. Keystone Shipping Co*, 446 A.2d 912 (Pa. Super. Ct. 1982); *Potts v. Dow Chemical Co.*, 415 A.2d 1220 (Pa. Super. Ct. 1979). Thus, any attempted waiver of section 303(b) does not restore typical contribution law; instead, section 303(b) enables a narrow contract-based exception to that immunity.

New Enterprise and Woodham also raise the argument that many of the cases cited by Bruce & Merrilees do not deal with a waiver situation. This factor has been considered. Upon

17

review, though, the Court feels that the cases affirm that a waiver of immunity, within a contract, establishes only the availability of a contractual relationship to realign risks and responsibilities. *See, e.g., Hefferin v. Stempkowski*, 372 A.2d 869, 871 (Pa. Super. Ct. 1977) (finding that WCA is "a complete substitute for, not a supplement to, common law tort actions"). This Court does not accept New Enterprise's and Woodham's arguments to the contrary.[3]

Based upon this analysis, a waiver of immunity does not simply return the state of the law to its status quo *ex ante* 1975, thereby allowing a claim based upon Pennsylvania's Uniform Contribution Among Tortfeasors Act (UCATA), 52 Pa. Cons. Stat. Ann. §§ 8321-27. Therefore, in the sense that this Court's Sept. 30 opinion propagated that viewpoint, it was a clear error of law. Claims against Bruce & Merrilees for contribution cannot be governed by UCATA for two reasons. First, as dictated by the above analysis, complete waiver of the PWCA provisions, so as to facilitate a UCATA claim, is neither intended nor allowed by the relevant statutory framework. Second, this finding is reinforced by review of the UCATA statute, which defines joint tortfeasors to be "two or more persons jointly or severally liable in tort for the same injury . . . ." 42 Pa. Cons. Stat. Ann. § 8322. In this matter, Bruce & Merrilees, by virtue of its statutory immunity, is not liable to its employee. Therefore, Bruce & Merrilees cannot fall within the definition of joint tortfeasor, because as an employer, it cannot be "jointly or severally liable in tort" to its employee. This definition-based argument, as raised in response to attempts by third

---

[3]It is New Enterprise and Woodham who are asking for an exception to the general rule of employer immunity. Therefore, in practical effect, if not required by formal law, it is New Enterprise's and Woodham's duty to persuasively argue to the Court a legitimate pathway as to how their cause of action exists. New Enterprise and Woodham have not met this argumentative burden. As stated in the introduction, this problem is not new. It has been examined and adjudicated, in likely every permutation imaginable, in all fifty states, with respect to state statutes, and in numerous federal forums with respect to those same state statutes and oftentimes similar federal statutes. Surely, among all of these cases, New Enterprise and Woodham could have found some arguments with which to buttress their claims. However, they did not do so, and the weight of Pennsylvania law seems marshaled against them.

18

parties to find contribution liability against employers, is the currently accepted majority rule in the country. *See* 7-121 Larson's Workers' Compensation Law § 121.02. While a few jurisdictions have chosen to allow employers to be defined as joint tortfeasors, Pennsylvania has not. Instead, a party seeking to raise a third party claim for contribution against an employer must base such claim upon an agreement where the liability to be imposed is expressly provided for in a written contract.

The Court's analysis in this matter essentially disposes of the viability of Woodham's & New Enterprise's claims against Bruce & Merrilees; however, for purposes of completeness, the Court will also assess whether it is possible that Bruce & Merrilees entered into a sufficiently express contract to establish liability for a contract-based contribution claim by New Enterprise and Woodham.

## V. Viability of a Contract-based Contribution Claim in this Matter

Woodham and New Enterprise downplay the significance of the lack of privity of contract between themselves and Bruce & Merrilees. However, Bruce & Merrilees asserts, and the Court cannot find evidence to the contrary, that no Pennsylvania court has permitted a third party to recover contribution from an employer where the party seeking contribution is not a party to any contract with the employer.[4]

In promoting their theory, New Enterprise and Woodham propose that this Court can interpret the language of section 303(b) to give effect to a contract entered into only by the employer. Bruce & Merrilees responds that the "party alleged to be liable" language necessitates that any third party seeking contribution be a party to the contract. This issue arises in part

---

[4]Taken alone, such a lack of case law is not dispositive, as perhaps no case had dealt with *this* contract and *this* situation. However, the singularity of New Enterprise's & Woodham's argument should have signalled to them the need to more extensively brief and argue their positions.

19

because the language "party alleged to be liable" is decidedly ambiguous. The statute previously referenced "employer" and "third party", yet neither of these terms is used in place of "party alleged to be liable." Therefore the Court can only construe this "party alleged to be liable" language as an attempt to refer to a broadened class of entities. The boundaries of this class are ambiguous if defined only linguistically. If this Court were interpreting this statute as a blank slate, we would likely resort to logic as applied to the facts of contractual situations. Upon doing so, it is possible we would come to a conclusion similar to that asked of us by Wodham and New Enterprise. However, this statute, at least not since 1975, is not a blank slate; instead, it has been interpreted at length by Pennsylvania courts. Furthermore, similar statutes with similar clauses have been interpreted by other federal and state courts.

Pennsylvania cases interpreting such contractual causes of action, typically based upon direct contractual indemnification clauses, require that parties seeking indemnity or contribution rights be expressly named within the contract. *Integrated Project Servs.* v. *HMS Interiors, Inc.*, 931 A.2d 724, 735 (Pa. Super. Ct. 2007) ( explaining that "contracting parties must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability . . . ."); *see also id.* at 308-09 ("In order to avoid the ambiguities which grow out of the use of general language, contracting parties must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own negligence which result in harm to the employees of the named employer. Absent this level of specificity in the language employed in the contract of indemnification, the Workmen's Compensation Act precludes any liability on the part of the employer.").

Pennsylvania law requires that an employer's undertaking of liability, for which it is

20

otherwise immune, must be clear and precise. *Integrated Project Servs. v. HMS Interiors, Inc.*, 931 A.2d 724 (Pa. Super. Ct. 2007) ("Absent this level of specificity in the language employed in the contract of indemnification, the Workmen's Compensation Act precludes any liability on the part of the employer"); *see also Snare v. Ebensburg Power Co.*, 637 A.2d 296, 299 (Pa. Super. Ct. 1993) ("[t]he parties must specifically utilize language which indicates that the employer/alleged indemnitor intends to indemnify the third party against claims by employees of the alleged indemnitor; this must clearly appear from the terms of the agreement."); *Szymanski-Gallagher v. Chestnut Realty Co.*, 597 A.2d 1225 (1991) (" . . . under the language of the statue, where an employer previously agrees in writing to indemnify the third party for damages, the employer can be held so liable."). None of the indemnification clauses in the at-issue contract identifies New Enterprise, Woodham, or any other subcontractors working on the Bedford Airport project.

The Sept. 30 opinion included a problematic footnote that implied that New Enterprise and Woodham were intended beneficiaries of the at-issue Bruce & Merrilees contract. However, upon a more complete analysis of the contract, it becomes evident that any intent to indemnify and benefit another party is expressly limited to Kimball. Paragraph 70-12 provides: "It is specifically agreed between the parties executing the Contract that it is not intended by any of the provisions of any part of the Contract to create the public or any member thereof a third party beneficiary or to authorize anyone not a party to the Contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this contract." Doc. No. 126, ex. A. This paragraph confirms Bruce & Merrilees' intent not to benefit any party other than Kimball.

Regardless, third-party beneficiary status, even if extant, would not resolve the deficiencies in the attempted contribution cause of action, as explained above. Since New

21

England and Woodham have attempted to proceed based upon a tort action, rather than a contract action, their status as beneficiaries of the contract is ultimately not relevant.

## V. Conclusion

This matter turned upon whether a waiver of the immunity restores normal UCATA actions; since Pennsylvania Courts have never indicated this to be the case, and substantial evidence exists contrary to such an interpretation, this Court cannot find such a cause of action to be viable. In contribution, the duty of the employer to the third party is derivative from the employer's joint liability to the employee; because the compensation act destroyed that liability, Woodham's and New Enterprise's claims for contribution from Bruce & Merrilees cannot continue. Therefore, the Court's Sept. 30 order, to the extent that it allowed the contribution claim, was errant and is hereby amended.[5] An appropriate order follows.

---

[5]In the Court's Sept. 30 order, the inequities of this situation led it to read a poorly drafted contract in a manner that allowed for the adjudication of Bruce & Merrilees' negligence, by establishing that Woodham and New Enterprise could utiltize tort doctrines due to Bruce & Merrilees' express waiver. Somewhat ironically, the Court suspects that the clause in the contract was likely added in response to Pennsylvania's aggressive requirements for valid indemnifications in the worker's compensation immunity context. This reasoning cured one inequity of the PWCA. However, Pennsylvania law proscribes this attempt at equity. Thus, we herein give effect to the intent of the Pennsylvania legislature, as well as the weight of Pennsylvania courts who have considered similar matters.

The Court also notes that in this matter, many of the arguments raised in the Motion for Reconsideration should have been raised in opposition to the motion for joinder; instead, Bruce & Merrilees failed to oppose joinder at all. When an issue is raised via a motion to dismiss, the matter is viewed under a generous standard: whether a party should be allowed to introduce evidence regarding its claim. Since the allegation had been made of a contractual arrangement for waiver of immunity, and adjudication of such would have required the court to proceed outside of the content of the pleadings, this Court allowed the contribution claim to proceed past that stage. While taking responsibility for this mistake, the Court believes the issue may have been more properly resolved had it been accurately briefed at the proper time. The success and fairness of our system of jurisprudence, which engages non-specialist courts to deal with innumerable matters across numerous fields of law, depends largely upon well-drafted litigant filings and arguments.

22

## ORDER

AND NOW, this 13th Day of February, 2009, exercising its discretion to amend and correct its September 30 order, and in accordance with the above opinion, IT IS HEREBY ORDERED that Bruce & Merrilees' Motion to Dismiss Third-Party Complaint (Doc. No. 146) is granted in full, and all remaining claims against Bruce & Merrilees for contribution, as raised in Docs. No. 109 and 111, are hereby dismissed.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**